Osmond BROWN, Plaintiff,

v.

Mr. Edward McELROY, District Director, et al., Defendants.

No. 00 Civ. 655(VM).

United States District Court, S.D. New York.

Sept. 4, 2001.

Osmond Brown, Bronx, NY, pro se.

### DECISION AND AMENDED ORDER

MARRERO, District Judge.

Plaintiff Osmond Brown ("Brown") brings this pro se action alleging claims pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Brown claims that his Eighth Amendment rights were violated by various officials at the Immigration and Naturalization Service ("INS") and the Public Health Service ("PHS") named as defendants in this action. Specifically, Brown alleges that these officials failed to provide him with adequate medical treatment; made false statements about his medical condition and ability to travel; housed him in extremely cold conditions; failed to provide him with clean linens, clothing and toiletries; and used excessive force in effecting his transfer from INS custody to another detention facility.

Defendants have moved to dismiss portions of the amended complaint and for summary judgment,[1] arguing that: (1) the

---

1. The Government provided Brown with no-  tice of Fed.R.Civ.P. 56 and the consequences

PHS defendants are absolutely immune from Brown's claims pursuant to the Public Health Service Act, 42 U.S.C. § 233(a); (2) the INS defendants are protected by qualified immunity from Brown's medical indifference claims; and (3) the amended complaint fails to state a claim for retaliation against defendants Migliaccio and Strubeck, or for unconstitutional conditions of confinement or excessive force against defendants McElroy, Monroe and Lopez. Defendants also request that this Court order Brown to amend his complaint as to the remaining excessive force claims against defendants Rodriguez, Williams, and John Does numbered one and two. For the reasons set forth below, the motion is granted.

## FACTS[2]

Brown was taken into INS custody on November 3, 1997, pursuant to an Order of Deportation entered on May 21, 1997, and was housed at the Processing Center (the "PC") located on Varick Street in New York, New York. Brown allegedly fell in the PC's medical unit on three separate occasions: December 23, 1997; June 22, 1998; and April 8, 1999. On or about September 8, 1999, Brown was transferred from INS custody to the Buffalo Federal Detention Facility in Batavia, New York. On August 3, 2000, Brown was released from INS custody while INS officials continued to arrange for his deportation.

Brown claims that defendants Migliaccio, Strubeck, Cheung, Gilman and Park denied him adequate medical treatment for his injuries by failing to take him to the hospital in a timely fashion and by ignoring his medical complaints and that Brown missed scheduled medical appointments

which the PHS defendants told him he could not make for security reasons. Brown maintains that the alleged lack of medical attention rendered him disabled and bound to a wheelchair. In addition, Brown alleges claims of medical indifference against INS defendants McElroy, Monroe and Lopez based on certain letters he wrote to these officials notifying them of his serious medical condition to which they failed to respond.

Brown further argues that defendants Migliaccio and Strubeck made false statements in their letters—one undated and the other dated May 3, 1999, respectively—to the Jamaican Embassy and to INS officials concerning his medical condition and ability to travel to Jamaica. Brown also alleges that he was kept in an unbearably cold room and was refused access to a warm hallway. Although Brown notified defendant Rodriguez of the excessive air conditioning and his lack of clean linens and clothing, Brown claims Rodriguez failed to correct the situation.

Finally, Brown claims that on September 8, 1999, INS defendants Rodriguez, Williams, and John Does numbered one and two—described respectively as "the driver of the van" and "the one who put both the handcuff and the ankle cuff and chain on me"—entered his room and began to pack his belongings. When Brown inquired about what was happening, John Doe number one allegedly jumped on Brown, grabbed him by the neck and yelled at him in a derogatory manner.

Brown alleges that John Doe number one elbowed him in the mouth, breaking one of his teeth, chipping another, and causing four teeth to become loose. Certain defendants then allegedly proceeded

of noncompliance therewith.

**2.** The facts are drawn from the allegations set forth in Brown's amended complaint and cer-

tain facts advanced by the Government which Brown has not disputed.

to hold Brown down and forcibly undress and then dress him. They also allegedly placed handcuffs on Brown—which were so tight that they caused Brown pain and a loss of circulation—and threw him across his wheelchair while continuing to beat on him. Once they arrived at the van, these defendants allegedly put ankle cuffs on Brown despite the fact that he was unable to walk.

## *DISCUSSION*

A.  *Absolute Immunity for PHS Defendants*

■ The Government contends that the PHS Defendants, who were acting within the scope of their employment when they treated Brown, are entitled to absolute immunity because the Federal Tort Claims Act ("FTCA") provides the only remedy for the conduct alleged by Brown. *See* Memorandum of Law in Support of Defendants' Motion, dated Mar. 9, 2001 (the "Government Memo"), at 9–11; Reply Memorandum of Law in Further Support of Defendants' Motion, dated June 29, 2001, at 2–6.

Section 233(a) of the Public Health Service Act makes the FTCA the exclusive remedy for specified actions against PHS members. *See* 42 U.S.C. § 233(a). The Second Circuit recently reiterated this proposition, concluding that PHS doctors enjoyed absolute immunity from certain medical misconduct claims because their alleged improper behavior occurred within the scope of their offices and during the course of their performance of medical or related functions. *See Cuoco v. Mori-tsugu,* 222 F.3d 99, 107 (2d Cir.2000). In that case, the court also noted that the purpose of § 233(a) was to protect commissioned PHS officers and employees from being subjected to suit while performing medical and similar functions by requiring that such lawsuits be brought against the United States instead. *See id.* Accordingly, the court held that the exclusive remedy for injuries allegedly caused by the conduct of the PHS defendants was against the United States under the FTCA. *See id.*

The United States Attorney for this District certified that the PHS Defendants named as defendants in this action were acting within the scope of their office or employment as commissioned officers of the PHS at the time of the alleged incidents. *See* Declaration of Sarah S. Normand, sworn to Mar. 9, 2001 ("Normand Decl."), Ex. E; *see also* 42 U.S.C. § 233(c); *Bueno v. Sheldon,* No. 99 Civ. 10348, 2000 WL 565192 (S.D.N.Y. May 9, 2000). Brown has not challenged the certification.

■ Moreover, the alleged failure of defendants Strubeck, Cheung, Gilman and Park to provide Brown with adequate medical treatment, if true, occurred within their capacity as doctors responsible for rendering medical treatment to Brown. Therefore, like the defendants in *Cuoco,* these defendants are immune from such claims,[3] and the United States must be substituted as a defendant in this matter in place of the PHS defendants.

B.  *Jurisdictionally Barred Claims*

The Government argues that once the United States is substituted as the party

---

**3.** Regarding any claims against any of the PHS defendants for retaliation, the Court has concluded that these defendants are entitled to absolute immunity under 42 U.S.C. § 233(a). The Court further finds that Brown has failed to allege that any action was taken in response to his exercise of a constitutional right and that his allegations are otherwise wholly conclusory, falling below the required specific and detailed factual allegations set forth in *Friedl v. City of New York,* 210 F.3d 79, 85 (2d Cir.2000). For these additional reasons, any retaliation claims should be dismissed.

defendant, Brown's claims are jurisdictionally barred because Brown has failed to file an administrative claim with either PHS or INS prior to commencing this action. *See* Government Memo at 13–14.

The FTCA requires that a claimant proceeding with a claim against the United States for money damages file an administrative claim with the "appropriate Federal agency" prior to the institution of any lawsuit. *See* 28 U.S.C. § 2675(a); *Keene Corp. v. United States,* 700 F.2d 836 (2d Cir.), *cert. denied,* 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983).

Based on the foregoing, the Court will allow Brown to file an administrative claim with the appropriate agency within sixty days of the date of this Decision and Order as provided under 28 U.S.C. § 2679(d)(5).

## C. Qualified Immunity for INS Defendants

■ The Government argues that the Court should dismiss Brown's medical indifference claims against the INS Defendants because they are entitled to qualified immunity. *See* Government Memo at 16. The Government argues that the INS Defendants did not have authority to intervene in Brown's medical treatment and that decisions regarding the medical care of INS detainees are made only by PHS staff. The Court concludes that the INS officials had no authority over the medical decisions concerning Brown and that their alleged refusal to interfere in Brown's treatment was neither prohibited by federal law nor objectively unreasonable.

■ A prison official may claim qualified immunity from suit in certain circumstances. It is well-established that qualified immunity acts to shield government officials from liability under section 1983 "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The extent of protection afforded defendants depends upon the "objective legal reasonableness" of defendants' actions "assessed in light of the legal rules that were 'clearly established' at the time [they were] taken." *See Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (quoting *Harlow,* 457 U.S. at 818–19, 102 S.Ct. 2727).

Defendants are entitled to summary judgment on qualified immunity grounds only if, drawing all inferences in favor of Brown, no rational jury could conclude that it was objectively unreasonable for defendants to believe that their actions did not violate a clearly established right. *See Culp v. Koenigsmann,* No. 99 Civ. 9557, 2000 WL 995495, at *7 (S.D.N.Y. Jul.19, 2000) (citing *Williams v. Greifinger,* 97 F.3d 699, 706 (2d Cir.1996); *In re State Police Litigation,* 88 F.3d 111, 123 (2d Cir.1996)).

In *Cuoco,* 222 F.3d 99, the district court dismissed claims as to certain defendants, namely the warden and a health services administrator, because they were not involved in the medical decisions made with respect to the plaintiff. The court held that the defendants were named in the action solely because of their supervisory positions, and that such a respondeat superior theory would not suffice in a *Bivens* action. *See id.* On appeal, plaintiff claimed, as Brown does here, that the defendants were named because "each of the defendants was in a position to intervene" and, instead of doing so, "treated her with deliberate indifference." *Id.* at 110.

The Second Circuit affirmed, holding that the defendants were entitled to qualified immunity because (1) the conduct attributed to them was not prohibited by

federal law and (2) their failure to intercede in the medical treatment of an inmate was, if wrongful, not objectively unreasonable. *See id.* The court considered the fact that defendants were not medical doctors and had no authority to intervene in the medical decisions made by the facility's doctors. The Second Circuit further noted that "one can imagine the repercussions if non-medical prison officials were to attempt to dictate the specific medical treatment to be given to particular prisoners—for whatever reason." *Id.* at 111.

In this case, the INS Defendants were in a similar situation to that of the *Cuoco* defendants. The PHS staff controlled all medical decisions relating to INS detainees, and INS officials are not responsible for providing—nor are they authorized to provide—medical care to detainees at the INS Processing Center. *See* Normand Decl. and Monroe Decl., ¶¶ 15–17. The actions of deferring to the PHS doctors' recommendations were not prohibited by law and were objectively reasonable. Therefore, McElroy, Monroe, and Lopez are entitled to qualified immunity from Brown's medical indifference claims.

■ If this Court determined that the INS officials should not be afforded qualified immunity, then Brown would have the burden of establishing that these officials acted with deliberate indifference to his serious medical needs. Brown's amended pleading does allege indifference to his medical needs, specifically, that he was not brought to the hospital in a timely fashion and that he was only given muscle relaxants in spite of continuous pain and suffering of which the INS officials were well aware. *See* Brown's Memorandum, "Preliminary Statement," at 5–6. Brown's allegations, however, do not meet the deliberate indifference standard set forth in Supreme Court and Second Circuit case law.

In *Culp*, 2000 WL 995495, the court held that the plaintiff had not alleged sufficient facts to meet the subjective prong of the deliberate indifference test, that the defendants had acted with a sufficiently culpable state of mind. Culp was seen frequently by medical staff and by outside consultants, where he was given x-rays and examinations. *See id.* at *7. Culp's argument, like Brown here, centered around a denial of surgery, which the court viewed as merely a difference in opinion rather than any deliberate indifference to his medical needs. *See id.* In accord with the Supreme Court's reasoning in *Estelle*, the court held that mere disagreement in treatment did not amount to an Eighth Amendment violation. *See id.* at *8.

More recently, a plaintiff argued that the defendant, a correctional facility's nurse administrator, was responsible for instances of delay and outright denial of treatment for the plaintiff's various complained of injuries. *See Demata v. New York State Correctional Dep't of Health Servs.*, 198 F.3d 233, 1999 WL 753142 (2d Cir.1999) (table). The court held that there was no indication that any delay in treatment was done in order to punish plaintiff and that the fact that plaintiff felt something more should have been done to treat his injuries was not a sufficient basis for a deliberate indifference claim. *See id.*

In this case, Brown was given several examinations following his falls in the infirmary by the PHS staff doctors, which he reveals in his amended complaint. *See* Am.Compl. at 6, 17–19, 23, 25, 59–60. Brown also was given pain medication and muscle relaxants throughout his stay in the medical unit. *See* Brown's Memorandum at 3, 6, 13. Moreover, Brown was taken to the hospital on at least two occasions where x-rays were taken.

■ It appears from the record before the Court that there existed only a difference in opinion over the proper treatment for Brown. However, as made clear in *Demata* and *Culp*, the fact that a plaintiff feels that more should have been done for his condition is not a sufficient basis for a deliberate indifference claim against these INS defendants. Accordingly, the Court grants the motion on the basis of qualified immunity and on the separate ground of failure to state a claim of deliberate indifference.

### D. *Unconstitutional Conditions of Confinement*

The Government argues that Brown fails to state a claim against defendants Rodriguez and Monroe for unconstitutional conditions of confinement because Brown has failed to allege specific facts which demonstrate that these defendants acted with deliberate indifference. *See* Government Memo at 18–20.

■ In the context of an Eighth Amendment claim based on prison conditions, a prisoner must prove that prison officials acted with "deliberate indifference." *See Wilson v. Seiter,* 501 U.S. 294, 297, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). Under this standard, the deprivation alleged by the prisoner must be in objective terms "sufficiently serious" such that the deprivation "denied the minimal civilized measure of life's necessities." *Id.* at 298, 111 S.Ct. 2321. A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *See Farmer v. Brennan,* 511 U.S. 825, 836, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

■ Here, Brown alleges in his amended complaint that his room was extremely cold and that he was without clean linens for the bed, toiletries, and clean clothing. He also alleges that defendant Rodriguez locked him in the cold room and would not allow him to enter the hallway for warmth, even when Brown complained about being sick from the low temperatures. Brown alleges that on numerous occasions he told Rodriguez about the conditions he faced and his need for clean linens and clothing, but that Rodriguez walked away and did nothing about the situation. Brown also claims that he wrote to defendant Monroe informing her of these conditions and that Monroe did nothing to remedy the situation.

■ The Court concludes that these alleged conditions are not sufficiently serious to state a claim of unconstitutional conditions of confinement. The conditions must involve the wanton and unnecessary infliction of pain. *See Rhodes v. Chapman,* 452 U.S. 337, 344, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). Although Brown's room may have been cold, he admits that he was able to get warm with some blankets. *See* Am.Compl. at 126. Therefore, Brown was able to provide himself with livable conditions. *See Seiter,* 501 U.S. at 304, 111 S.Ct. 2321. In addition, Brown does not claim that he was without any clothing. Therefore, Brown has not sufficiently alleged conditions that would satisfy the objective prong of such a claim.[4] The claim of unconstitutional conditions of confinement against Rodriguez and Monroe are dismissed.

---

4. The subjective prong need not be considered since the conditions of confinement alleged are not sufficiently serious: "This subjective component [deliberate indifference] is only relevant once a condition of confinement has been proved to be a severe deprivation." *See Graham v. Fries,* No. 93 Civ. 3371, 1996 WL 1057212, at *7 (E.D.N.Y. Oct.16, 1996)

### E. *Excessive Force*

#### (a) *Defendants McElroy/Monroe/Lopez*

▮ The Government contends that Brown fails to state an excessive force claim against defendants McElroy, Monroe, and Lopez because these defendants were not personally involved in the September 8, 1999 events leading to Brown's transfer from the PC to the Buffalo Detention Facility. *See* Government Memo at 20–21. The Court finds that Brown's allegations are insufficient to state a claim against these defendants.

▮ It is well settled in this Circuit that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *See Wright v. Smith,* 21 F.3d 496, 500 (2d Cir.1994). The doctrine of respondeat superior cannot be used to establish liability under section 1983. *See id.* at 500.

Here, Brown's allegations against defendants McElroy, Monroe, and Lopez sound only in respondent superior, or that these defendants are responsible for the conduct of defendants Rodriguez, Williams, and John Does numbered one and two simply because the three were in supervisory positions or positions of authority. Brown has failed to make any allegations under which these supervisory officials may be held liable, and his excessive force claims with respect to defendants Lopez, Monroe and McElroy are dismissed.

#### (b) *Defendants Rodriguez/Williams/John Does one and two*

The Government argues that the Court should require Brown to submit an amended pleading because "plaintiff's rambling repetitious, 146–page amended complaint

(citing *Seiter,* 501 U.S. at 299, 111 S.Ct.

utterly fails to comply with these requirements, thereby making it extremely difficult, if not impossible, for defendants to admit or deny plaintiff's specific allegations, as required by Rule 8(b)." Government's Memorandum at 21–22.

Rule 8(a) provides that "[a] pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Brown's pleadings include excessive material, pages and paragraphs not altogether coherently stated and extensive attachments presumably incorporated thereto, the combined documents totaling more than 180 pages.

Brown's amended complaint does not enable a clear determination of what portions comprise the excessive force claim against defendants Rodriguez, Williams and John Does one and two that survives defendants' motion. Accordingly, the Court directs Brown to file an amended complaint as to his one remaining excessive force claim which shall comply with Fed.R.Civ.P. 8(a) and contain (1) a short and plain statement of the grounds upon which the jurisdiction of the Court depends; (2) a short and plain statement of the claim(s) showing that he is entitled to relief; and (3) a demand for judgment for the relief sought. The Court will permit Brown to amend his pleading as to this one remaining claim either within 30 days of the date of this Decision and Order or after Brown has filed an administrative claim and exhausted his remedies in connection with his jurisdictionally barred claims.

### CONCLUSION AND ORDER

For the foregoing reasons, it is hereby **ORDERED** that defendants' motion to dismiss on the basis of absolute immunity

2321).

for PHS defendants Strubeck, Cheung, Gilman, Migliaccio and Park is granted; and it is further

**ORDERED** that defendants' motion for summary judgment on the basis of qualified immunity for INS defendants McElroy, Monroe, and Lopez is granted; and it is further

**ORDERED** that defendants' motion to dismiss the claim for unconstitutional conditions of confinement is granted; and it is further

**ORDERED** that defendants' motion to dismiss claims of excessive force against defendants McElroy, Monroe and Lopez is granted; and it is finally

**ORDERED** that Brown shall advise the Court by September 17, 2001 whether he (1) intends to submit an amended pleading—in connection with his claim for the use of excessive force by defendants Rodriguez, Williams and John Does one and two—in compliance with Fed.R.Civ.P. 8(a) and this Decision and Order by October 5, 2001 or (2) will first file an administrative claim before pursuing the excessive force claim,

**SO ORDERED.**