Michael SEREIKA, Plaintiff,

v.

Gautam PATEL, sued individually and personally, Joaqin Ysmael, sued individually and personally, Chito Evangeslista, sued individually and personally, Dr. Glover, sued individually and personally, MCC New York Health Services Unit, sued officially, Federal Bureau of Prisons, sued officially, and John/Jane Doe(s), sued individually and personally, Defendants.

No. 04 Civ. 8854(VM).

United States District Court, S.D. New York.

Jan. 25, 2006.

Michael Sereika, pro se.

### DECISION AND ORDER

MARRERO, District Judge.

Plaintiff Michael Sereika ("Sereika"), appearing *pro se,* brings this action pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), and the Federal Tort Claims Act ("FTCA"), alleging a violation of his Eighth Amendment rights. Sereika alleges that the defendants Gautam Patel ("Patel"), Ysmael Joaquin[1] ("Joaquin"), Chito Evangelista[2] ("Evangelista"), Dr. Mark Glover ("Glover") (collectively, the "individual Defendants"), the Federal Bureau of Prisons (the "BOP"), the BOP Metropolitan Correctional Center's New York Health Services Unit (the "MCC Health Services Unit"), and John/Jane Doe[s] (collectively, "Defendants"), violated his constitutional rights by depriving him of adequate medical treatment for a shoulder injury in the manner more specifically detailed below. Sereika asserts that as a result of Defendants' alleged delay in treatment and failure to provide proper treatment of his shoulder injury, he suffered severe pain and further injury to his shoulder, including reduced mobility in his right arm and shoulder. Sereika seeks damages in the amount of $500,000 from each Defendant and punitive damages in the amount of $1,000,000.

Defendants move for dismissal pursuant to Fed.R.Civ.P. 12(b) or, in the alternative, for summary judgment pursuant to Fed. R.Civ.P. 56. As set forth below, Sereika's *Bivens* claims against the BOP and the MCC Health Services Unit are dismissed on the grounds that *Bivens* actions against federal agencies are precluded under the doctrine of sovereign immunity.

Sereika's *Bivens* claims against the individual Defendants must be considered two separate claims: (1) a claim based on Defendants' alleged eighteen-day delay in providing any medical treatment after Sereika injured his shoulder in February 17, 2001 (the "delay claim"); and (2) a claim based on inadequate medical treatment provided to Sereika following the alleged eighteen-day delay (the "inadequate treatment claim"). For the reasons set forth below, the Court denies Defendants' motion for summary judgment with regard to Sereika's delay claim against the individual Defendants without prejudice and grants the Defendants leave to renew their motion after relevant discovery is completed. The Court concludes that Defendants are entitled to summary judgment dismissing Sereika's inadequate treatment claim. The Court dismisses Sereika's claims under the FTCA for lack of subject matter jurisdiction and failure to exhaust administrative remedies. Finally, the Court directs Sereika to file an amended complaint within 45 days of the date of this Order identifying the individual Defendants that made alleged misrepresentations to Sereika regarding the grievance process, as detailed below.

---

1. Ysmael Joaquin is incorrectly identified "Joaqin Ysmael" in the case caption.

2. Chito Evangelista is incorrectly identified as "Chito Evangeslista" in the case caption.

## I. FACTUAL BACKGROUND [3]

Sereika was incarcerated at the Metropolitan Correctional Center in New York City (the "MCC") from December 27, 1997 through April 6, 2001. While exercising at the MCC on February 17, 2001, Sereika injured his right shoulder. He alleges that he immediately reported to an MCC officer that he "thought he broke his arm while exercising." (Complaint at ¶ VI.2.) The officer allegedly contacted the MCC Health Services Unit on Sereika's behalf to report the injury and advised Sereika that a Health Services staff member would come to examine Sereika's shoulder right away. However, no Health Services staff responded to the call. Sereika claims that later that day he submitted a "sick-call" slip requesting an appointment with the MCC Health Services Unit and that he filed numerous additional sick-call slips during the following eighteen days. Sereika alleges that these requests were ignored.

On March 7, 2001, Sereika complained to an MCC correctional counselor that he was in severe pain as a result of his shoulder injury. The correctional counselor escorted Sereika to the MCC Health Services Unit, where he was examined by Patel, a "Mid–Level Practitioner" [4] employed by the MCC Health Services Unit. Sereika alleges that Patel ordered an X-ray of his shoulder and advised Sereika to rest the injured shoulder for fifteen days. Patel did not prescribe any pain medication.

On March 14, 2001, Sereika returned to the MCC Health Services Unit and was examined by Mid–Level Practitioner Joaquin. Sereika alleges that he was still experiencing severe shoulder pain and that Joaquin did not prescribe any pain medication. He alleges that Joaquin told him that his injury was healing properly and advised him to apply hot towel compresses to his shoulder for ten minutes, three times a day and to start exercising in about a week.

On March 19, 2001, Sereika returned to the MCC Health Services Unit and was examined by Evangelista, another Mid–Level Practitioner. Evangelista informed Sereika that the March 7, 2001 X-ray of his shoulder showed no fractures. Sereika asserts that Evangelista advised him to engage in shoulder stretching exercises. Although Sereika allegedly informed Evangelista that he was still experiencing

**3.** The factual recitation set forth below derives from the following documents on the record of the parties' motions: Amended Complaint for Damages ("Complaint"), dated May 12, 2005; Plaintiff's Response to Defendant's Motion to Dismiss and/or Motion for Summary Judgment Pursuant to Rule 56, Federal Rules of Civil Procedure ("Pl.'s Response"), dated September 1, 2005; Plaintiff's Statement of Material Facts Pursuant to Local Rule 56 ("Pl.'s Facts"); Plaintiff's Affidavit And/or Declaration in Opposition to Defendant's Motion to Dismiss and/or Motion for Summary Judgment Pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Pl.'s Aff."), dated September 1, 2005; Defendants' Statement of Undisputed Material Facts Pursuant to Local Rule 56.1 ("Dfs.'s Facts"), dated July 25, 2005; Defendant's Memorandum of Law in Support of Their Motion to Dismiss, and For Summary Judgment ("Dfs.' Mem."), dated July 25, 2005; Declaration of Adam M. Johnson ("Johnson Dec."), dated July 22, 2005; and Defendants' Reply Memorandum of Law in Further Support of Their Motion to Dismiss, and For Summary Judgment ("Dfs.' Reply"), dated September 26, 2005. Unless specifically quoted or otherwise cited as necessary, no other reference to these documents will be made.

**4.** Sereika refers to defendants Patel, Joaquin, and Evangelista as "physician's assistants." (Complaint at ¶ II.) Defendants characterize Patel, Joaquin, and Evangelista as "Mid–Level Practitioners," a BOP employment category that includes "graduate physician assistants, nurse practitioners, and unlicensed medical graduates who have a practice agreement with a licensed physician." (Johnson Dec. at ¶ 9.)

pain and requested pain medication, Evangelista did not prescribe pain medication.

Also on March 19, 2001, Sereika went to Glover's office and spoke to Glover. Sereika allegedly requested an examination by Glover, but Glover did not examine him. According to Sereika, Glover stated that "all my physicians are good and I will speak with them about your condition, and if I need to see you I would summons you back to Health Services." (Complaint at ¶ VI.8.)

On April 6, 2001, Sereika was transferred to the Metropolitan Detention Center in Brooklyn, New York (the "MDC"). He did not request medical attention for his shoulder while incarcerated at the MDC. Sereika remained at the MDC until February 14, 2003, when he was transferred to the Federal Correctional Institution in Fairton, New Jersey ("FCI Fairton"). In or about February 2003, Sereika reported to medical staff at FCI Fairton that he had injured his shoulder at MCC New York. In June, 2003, Sereika was examined by an orthopedic surgeon, identified as Dr. Silver, who diagnosed an apparent torn pectoralis muscle in Sereika's right shoulder area. (*See* Report dated June 18, 2003, attached as Exhibit D to Johnson Dec., at 40.) Dr. Silver's report noted that "if I see these acutely within the first few weeks of it I will consider repair, not at a late time.... [A]t this point I would not recommend any surgery, any specific therapy, but I would not limit his activity either." (*Id.*)

## II. DISCUSSION

### A. BIVENS CLAIMS AGAINST BOP AND MCC HEALTH SERVICES UNIT

■ Sereika alleges violation of his Eighth Amendment rights pursuant to *Bivens. See* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). A *Bivens* claim alleging violation of a constitutional right may be brought against a federal officer in his individual capacity. *See Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 509 (2d Cir.1994). However, a *Bivens* claim against a federal agency is precluded, as an action against a federal agency is essentially a suit against the United States, and *Bivens* actions against the United States are barred under the doctrine of sovereign immunity. *See id.* at 510. Accordingly, Sereika's *Bivens* claims against the BOP and the MCC Health Services Unit are dismissed on the grounds of sovereign immunity. *See id.; Paulino–Duarte v. United States*, No. 02 Civ. 9499, 2003 WL 22533401, at *3 (S.D.N.Y. Nov.7, 2003).

### B. BIVENS CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS

#### 1. Exhaustion of Administrative Remedies

■ Defendants assert that Sereika's individual *Bivens* claims must be dismissed because Sereika failed to exhaust his administrative remedies as required under the Prison Litigation Reform Act (the "PLRA"). The PLRA provides that "[n]o action shall be brought with respect to prison conditions ... until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997(e)(a). The PLRA's exhaustion requirement applies to all inmate suits related to prison life. *See Porter v. Nussle* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). The statute extends to cases where a plaintiff seeks a remedy not available through the administrative process, such as money damages. *See Booth v. Churner*, 532 U.S. 731, 733–34, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001).

Sereika alleges in his Complaint that he exhausted administrative remedies. (*See* Complaint at ¶ IV.1.) But in subsequent submissions, he concedes that he failed to exhaust administrative remedies. (*See*

Pl.'s Facts at ¶ 9.) However, Sereika asserts that Defendants are estopped from raising non-exhaustion as an affirmative defense because Defendants led Sereika to believe that the grievance process was unavailable or futile.

■ A defendant in a claim brought under the PLRA may be estopped from raising an affirmative defense of non-exhaustion on account of the prison official's own actions inhibiting the plaintiff from filing a grievance. *See Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir.2004). Sereika asserts that Defendants are estopped from raising non-exhaustion because they inhibited him from filing a grievance by leading him to believe that such a course would be futile. Specifically, Sereika claims that:

> Plaintiff did not initiate or exhaust the administrative remedies available ... because he was led to believe by the MCC New York medical staff that his injury was not an issue for grievance but a medical matter, and that the medical staff would handle the matter as a prerequisite to filing a grievance. Moreover, plaintiff was led to believe by the MCC New York medical staff that filing a grievance would be futile because he would not receive the treatment he was seeking.

(Pl.'s Facts at ¶ 9.)

■ Where a plaintiff alleges that the defendant made misrepresentations that inhibited the plaintiff from participating in the grievance process, dismissal of the complaint for failure to exhaust is not appropriate. *See, e.g., Feliciano v. Goord,* No. 97 Civ. 0263, 1998 WL 436358, at *2 (S.D.N.Y. July 27, 1998) (denying motion to dismiss where officials told plaintiff that incident was "not a 'grievance matter'"); *Davis v. Frazier,* No. 98 Civ. 2658, 1999 WL 395414, at *4 (S.D.N.Y. June 15, 1999) (denying summary judgment where plaintiff alleged that prisoners were informed that "a grievance cannot be brought against Officers or Staff").

■ While Sereika's allegations raise an issue of fact regarding whether some Defendants may be estopped from asserting non-exhaustion as a defense, the allegations do not identify which of the individual Defendants made the alleged misrepresentations about the grievance process. Therefore, the Court is unable to determine which Defendants may be estopped from raising a non-exhaustion defense and which Defendants may be entitled to dismissal on account of Sereika's failure to exhaust. The Court instructs Sereika to file an amended complaint within 45 days of the date of this Order indicating which of the individual Defendants made the alleged misrepresentations regarding the grievance process. The Court grants the Defendants leave to renew their motion to dismiss for failure to exhaust administrative remedies after Sereika files an amended complaint, or in the alternative, after the time period for filing an amended complaint as set forth above has elapsed.

### 2. *The Delay Claim*

Defendants' instant motion seeks dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) or (6) or, in the alternative, summary judgment pursuant to Rule 56. The Defendants argue that the Complaint should be dismissed pursuant to Rule 12(b)(6) because the Complaint does not allege that each individual Defendant was personally involved in the alleged misconduct, and the Complaint does not include specific factual allegations that support Sereika's conclusory allegation of personal involvement by each of the individual Defendants.

■■ To state a claim for a constitutional violation pursuant to *Bivens,* a plaintiff must allege that each defendant was personally involved in the alleged miscon-

duct. *See Nwaokocha v. Sadowski*, 369 F.Supp.2d 362, 373 (E.D.N.Y.2005). Defendants argue that Sereika failed to allege that each of the individual Defendants was personally involved in the alleged delay in providing medical treatment. However, the Complaint does in fact contain allegations that each of the individual Defendants was personally involved in the delay in providing treatment. The Complaint alleges that "each" of the individual Defendants "did combine, conspire, and confederate together" to "intentionally deprive" Sereika of necessary medical treatment for "a twenty-day period" (Complaint at ¶ V.1).

Defendants further assert that this conclusory allegation is insufficient to withstand a Rule 12(b)(6) motion to dismiss because the allegation is not supported by specific factual allegations. However, to survive a Rule 12(b)(6) motion to dismiss, Sereika is not required to plead facts in addition to and in support of his allegation of personal involvement. Such a requirement would amount to a heightened pleading standard and is unwarranted under Fed.R.Civ.P. 8(a)(2). *See Phelps v. Kapnolas*, 308 F.3d 180, 186 (2d Cir.2002) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512–13, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993)).

■ Defendants argue in the alternative that the Court should grant summary judgment dismissing Sereika's *Bivens* claims against the individual Defendants pursuant to Fed.R.Civ.P. 56.[5] Summary judgment should be granted where the record before the court demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When examining a motion for summary judgment, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Skubel v. Fuoroli*, 113 F.3d 330, 334 (2d Cir.1997). Furthermore, the Court must afford "special solicitude" to *pro se* litigants confronted with summary judgment motions. *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir.1988). As Sereika appears in this action *pro se*, the Court must construe Sereika's claims liberally and read his submissions to raise the strongest arguments they suggest. *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994).

■ To establish an Eighth Amendment violation based on a claim that a prison official has improperly denied medical care, an inmate must show that the prison official acted with "deliberate indifference" to the inmate's "serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104–105, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The deliberate indifference standard includes both an objective and a subjective prong. *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir.1996). The objective prong requires that the medical condition of the complainant must be "sufficiently serious" *Id.* The subjective prong requires that the charged official must act with a sufficiently culpable state of mind. *See id.* "The required state of mind, equivalent to criminal recklessness, is that the official 'knows of an disregards an excessive risk to inmate health or safety;

---

**5.** Rule 56.2 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York requires that represented parties moving for summary judgment against a *pro se* litigant serve notice on the *pro se* litigant warning that he must submit evidence countering the facts asserted by the movant. Defendants have complied with this provision. (*See* Notice to *Pro Se* Litigant Opposing Motion for Summary Judgment, dated July 25, 2005.)

the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir.1998) (quoting *Hathaway*, 99 F.3d at 553). Thus, to satisfy the subjective prong of the deliberate indifference standard, Sereika must demonstrate that the individual Defendants knew of and disregarded an excessive risk to his health and safety. *Hemmings*, 134 F.3d at 108.

### a. The Subjective Prong of the Deliberate Indifference Test

As noted above, the subjective prong of the deliberate indifference standard requires that the charged official must know of and disregard excessive risk to inmate health or safety. *Hemmings*, 134 F.3d at 108. Defendants assert that Sereika failed to allege facts sufficient to substantiate his allegation that the individual Defendants knew of and were personally involved in the delay in providing medical treatment for Sereika's shoulder injury. The Court concludes that summary judgment dismissing Sereika's delay claim on this basis is premature, as Sereika has not yet had an adequate opportunity to conduct discovery concerning the individual Defendants' personal knowledge or involvement in the delay in treatment.

 Summary judgment may be premature prior to an adequate opportunity for discovery. *See Meloff v. New York Life Ins. Co.*, 51 F.3d 372, 375 (2d Cir. 1995); *Sutera v. Schering Corp.*, 73 F.3d 13, 18 (2d Cir.1995) (reversing summary judgment entered before any discovery had taken place); *George C. Frey Ready–Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp.*, 554 F.2d 551, 555 (2d Cir.1977) (finding summary judgment premature when the parties had not yet conducted discovery). Before a Court grants summary judgment, the non-movant "must have 'had the opportunity to discover information that is essential to his opposition' to the motion for summary judgment." *Hellstrom v. U.S. Dept. of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000) (quoting *Trebor Sportswear Co. v. The Limited Stores, Inc.*, 865 F.2d 506, 511 (2d Cir.1989)). In the instant proceeding, Sereika has not had an adequate opportunity to conduct discovery that could uncover evidence to support his allegation of personal involvement by the individual Defendants. The Court accordingly denies Defendants' motion for summary judgment with respect to Sereika's delay claim without prejudice and grants Defendants leave to renew their motion after relevant discovery has been completed.

### b. The Objective Prong of the Deliberate Indifference Test

Defendants assert that the alleged eighteen-day delay in treatment of Sereika's shoulder injury does not state a claim for deliberate indifference because Sereika's shoulder injury was not "life-threatening or fast-degenerating" and thus not sufficiently serious to meet the objective prong of the deliberate indifference standard. (Dfs.' Mem. at 19.) The Second Circuit has stated that a delay in providing medical care rises to the level of deliberate indifference where officials ignored a "life-threatening or fast-degenerating" condition. *Demata v. New York State Correctional Dept. of Health Services*, 198 F.3d 233 (table) (2d Cir.1999) (citing *Liscio v. Warren*, 901 F.2d 274, 277 (2d Cir.1990)). However, in *Brock v. Wright*, the Second Circuit held that a district court erred in ruling that only "extreme pain" or a "degenerative" condition would suffice to meet the legal standard for deliberative indifference. 315 F.3d 158, 163 (2d Cir.2003). The *Brock* court noted that "the Eighth Amendment forbids not only deprivations

of medical care that produce physical torture and lingering death but also less serious denials which cause or perpetuate pain." *Id.* (quoting *Todaro v. Ward,* 565 F.2d 48, 52 (2d Cir.1977)). The *Brock* court stated that an inmate is not required "to demonstrate that he or she experiences pain that is at the limit of human ability to bear, nor do we require a showing that his or her condition will degenerate into a life-threatening one." *Id.*

■ "There is no settled, precise metric to guide a court in its estimation of the seriousness of a prisoner's medical condition." *Id.* at 162. However, the Second Circuit has set forth considerations that should guide the analysis. These considerations include (1) whether a reasonable doctor or patient would perceive the medical need in question as "important or worthy of comment or treatment," (2) whether the medical condition significantly affects daily activities, and (3) "the existence of chronic and substantial pain". *See Chance v. Armstrong,* 143 F.3d 698, 702–703 (2d Cir.1998) (quoting *McGuckin v. Smith,* 974 F.2d 1050, 1059–60 (9th Cir.1992)).

Sereika asserts that following his shoulder injury, he experienced "great discomfort and pain." (Pl.'s Aff. at 2.) Sereika also asserts that the alleged delay in treatment exacerbated his injury and that as a result of the delay and inadequacy of treatment, he "lost a great deal of mobility in his right arm and shoulder." (Complaint at VII.1; *see also* Pl.'s Aff. at 5.) Defendants challenge Sereika's allegation that he experienced severe pain following his injury, noting that his medical records include a notation that he denied experiencing pain related to his shoulder injury during his March 14, 2001 visit to the MCC Health Services Unit, that he checked "no" next to a question asking him to indicate whether he had a "painful or 'trick' shoulder or elbow" on a medical form in February, 2003, (Dfs.' Mem. at 15,

citing Medical History Report, attached as Exhibit D to Johnson Dec., at 29), and that he did not request any treatment for his shoulder during the period of April, 2001 through approximately February, 2003.

Sereika's allegation that he experienced severe pain as a result of the alleged delay in treatment, together with his allegation that the alleged delay in treatment resulted in reduced mobility in his arm and shoulder, raise issues of fact as to whether his shoulder injury constitutes a sufficiently serious medical condition to satisfy the objective prong of the deliberative indifference standard. Therefore, the Court concludes that summary judgment is not warranted with respect to Sereika's delay claim.

### c. *Qualified Immunity*

■ Defendants argue that Sereika's claims against the individual Defendants should be dismissed on the grounds of qualified immunity. "A government official is entitled to qualified immunity from suit for actions taken as a government official if (1) the conduct attributed to the official is not prohibited by federal law, constitutional or otherwise; (2) the plaintiff's right not to be subjected to such conduct by the official was not clearly established at the time of the conduct; or (3) the official's action was objectively legally reasonable in light of the legal rules that were clearly established at the time it was taken." *Cuoco v. Moritsugu,* 222 F.3d 99, 109 (2d Cir.2000) (citations omitted).

■ A prisoner's right to medical treatment is a clearly established constitutional right. *See, e.g., Estelle,* 429 U.S. at 104, 97 S.Ct. 285. Where a right is clearly established, a government official is entitled to qualified immunity if it was "objectively reasonable for him to believe that his actions were lawful at the time of the challenged act." *Cerrone v. Brown,* 246

F.3d 194, 199 (2d Cir.2001) (internal quotation marks and citation omitted).

■ Dismissal on the basis of a qualified immunity defense is not appropriate where there are facts in dispute that are material to a determination of reasonableness. *See Thomas v. Roach,* 165 F.3d 137, 143 (2d Cir.1999). In the instant proceeding, material issues of fact exist concerning the severity of Sereika's condition and the state of mind of the individual Defendants that are material to a determination of reasonableness. Therefore, Defendants' motion to dismiss Sereika's *Bivens* claims against the individual Defendants on qualified immunity grounds is denied. *See Kee v. Hasty,* No. 01 Civ. 2123, 2004 WL 807071 (S.D.N.Y. April 14, 2004).

### 3. *The Inadequate Treatment Claim*

■ In addition to alleging an eighteen-day delay in treatment for his shoulder injury during the period of February 17, 2001 through March 6, 2001, Sereika claims that he received inadequate or improper medical treatment at the MCC on and after March 7, 2001. The Complaint alleges that Defendants violated Sereika's Eighth Amendment rights by depriving him of pain medication; failing to provide access to specialist care and follow-up examinations that his condition warranted; allowing cost, security, or transportation concerns to influence decision-making regarding treatment; improperly allowing examinations by physician assistants rather than by a doctor; and failing to properly diagnose and treat his injury.

■ For the reasons set forth below, the Court concludes that Defendants are entitled to summary judgment dismissing Serieka's inadequate treatment claims arising out of Defendants' alleged acts or omissions on or after March 7, 2001. The Court's analysis is guided by extensive case law which "draws a clear distinction between situations in which the physician provides no medical care, which may amount to deliberate indifference, and those in which the physician provides merely substandard care, which amounts at most to negligence." *Nelson v. Roads,* No. 01 Civ. 7887, 2002 WL 31075804, at *15 (S.D.N.Y. Sept.17, 2002) (quoting *Coppage v. Mann,* 906 F.Supp. 1025, 1038–39 (E.D.Va.1995)). Negligence alone in diagnosing or treating an inmate's medical condition does not state a valid claim of medical mistreatment under the Eight Amendment's deliberate indifference standard. *See Estelle,* 429 U.S. at 105–06, 97 S.Ct. 285.

■ Furthermore, "it is well-established that mere disagreement over the proper treatment does not create a constitutional claim." *Chance,* 143 F.3d at 703. It is undisputed that Sereika was examined and received medical treatment for his shoulder injury on March 7, 2001, March 14, 2001, and March 19, 2001. On March 7, 2001, Patel examined Sereika, ordered an X-ray and advised Sereika to refrain from exercising his shoulder. On March 14, 2001, Joaquin examined Sereika and advised Sereika to rest his shoulder, start exercising in a week, apply not compresses several times per day, and sign up for sick-call as needed. On March 19, 2001, Evangelista examined Sereika, informed Sereika that the X-ray results showed no fractures and advised shoulder stretching exercises as needed. Sereika complains that the treatment he received from the individual Defendants was inadequate in the ways described above.

Sereika's allegations that he was not prescribed pain medication, that he was not referred to a specialist, that he was examined by physician assistants rather than a doctor, and that he was improperly diagnosed and treated do not state a claim for deliberate indifference, as "mere disagreement in treatment [does] not amount

to an Eighth Amendment violation." *Brown v. McElroy*, 160 F.Supp.2d 699, 705–06 (S.D.N.Y.2001) (citing *Demata*, 198 F.3d at 233 ("That *Demata* feels something more should have been done to treat his injuries is not a sufficient basis for a deliberate indifference claim.")); *see also Zimmerman v. Macomber*, No. 95 Civ. 0882, 2001 WL 946383, at *8 (S.D.N.Y. Aug.21, 2001); *Reyes v. Turner*, No. 93 Civ. 8951, 1996 WL 93728, at *9 (S.D.N.Y. March 5, 1996).

Furthermore, Sereika's claim that he did not receive follow-up examinations is not supported by the record. Sereika received three examinations during the period of March 7, 2001 through March 19, 2001. It is undisputed that thereafter he did not request any further medical treatment at the MCC and in fact did not seek further treatment for his injury until after his transfer to FCI Fairton in February, 2003.

 Finally, Sereika's allegations that Defendants inappropriately "allowed cost, security, or transportation concerns to influence decision-making regarding treatment" (Complaint at ¶ V) are also unsupported in the record. An allegation that medical treatment decisions were guided by inappropriate considerations, such as monetary incentives or an intent to punish the plaintiff, is sufficient to state a claim for deliberate indifference. *See, e.g., Chance*, 143 F.3d at 704 (holding that where plaintiff alleged that doctors recommended a less expensive treatment not on the basis of medical views, but solely because of monetary incentives, such allegation of an ulterior motive was sufficient to state a claim for deliberate indifference). *See also, Bob v. Armstrong*, No. 3:02 CV 1785RNCDFM, 2004 WL 1151576, at *2 (D.Conn. May 21, 2004) (denying summary judgment for defendants were plaintiff alleged facts in support of allegation that medical treatment decisions were inappropriately based on cost concerns). However-

er, Sereika's assertion that Defendants based medical treatment decisions on cost or other inappropriate concerns is entirely unsupported in the record. While a court has an obligation to read a *pro se* party's supporting papers liberally, a *pro se* litigants's "bald assertion[s]," completely unsupported by evidence, are not sufficient to overcome a motion for summary judgment. *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir.1991). *See also Podell v. Citicorp Diners Club, Inc.*, 112 F.3d 98, 101 (2d Cir. 1997). The nonmoving party "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indust. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Thus, "[s]tatements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir.1999) (citations omitted). Sereika's allegation that Defendants' medical treatment decisions were influenced by inappropriate considerations is unsupported by any admissible evidence and is therefore insufficient to defeat summary judgment.

 As noted above, summary judgment may be premature where there has not been either actual discovery or the opportunity for discovery. *See Meloff v. New York Life Ins. Co.*, 51 F.3d at 375. However, where the non-movant has not come forward with any factual allegations that would provide a basis for granting discovery, a court may deny requests for discovery and grant summary judgment. *See Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 251 (2d Cir. 1985) (" '[W]here a plaintiff fails to produce any specific facts whatsoever to support a conspiracy allegation, a district court may, in its discretion, refuse to permit discovery and grant summary judg-

ment' ") (quoting *Contemporary Mission Inc., v. United States Postal Service,* 648 F.2d 97, 107 (2d Cir.1981)); *Carney v. Dept. of Justice,* 19 F.3d 807, 813 (2d Cir.1994) (holding that district court did not err in denying plaintiff discovery pursuant to Rule 56(f) because plaintiff's allegations were "grounded in mere speculation."). *See also, Cornett v. Sheldon,* 894 F.Supp. 715, 724 (S.D.N.Y.1995).

Sereika does not provide any factual allegations to support his allegation that Defendants' medical treatment decisions were improperly influenced by cost, security, or transportation concerns, and he does not indicate any specific discoverable information that would raise a material issue of fact sufficient to overcome Defendants' motion. *See Paddington Partners v. Bouchard,* 34 F.3d 1132, 1138 (2d Cir.1994). Furthermore, Sereika has not requested discovery and has not submitted an affidavit pursuant to Rule 56(f) requesting discovery. *See id.* at 1137 ("[T]he failure to file an affidavit under Rule 56(f) is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate"). Accordingly, the Court grants Defendants' motion for summary judgment dismissing Sereika's inadequate treatment claim.

## C. *CLAIMS PURSUANT TO THE FTCA*

■ To the extent that Sereika asserts a separate claim for money damages "for injury ... caused by the negligent or wrongful act or omission" of a federal agency or federal employee, his claims are governed by the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680 (the "FTCA"). The FTCA precludes tort suit against federal agencies and makes the only proper federal institutional defendant in such an action the United States. *See Rivera v. United States,* 928 F.2d 592, 609 (2d Cir.1991). Therefore, Sereika's claims against the MCC and the BOP are also

dismissed for lack of subject matter jurisdiction. *See id.*

Section 2679(d)(1) of the FTCA provides that "upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States ... and the United States shall be substituted as the party defendant." 28 U.S.C. § 2679(d)(1). The United States Attorney for the Southern District of New York has certified that the individual Defendants were acting within the scope of their employment. (*See* Certification of David N. Kelley, dated June 21, 2005, attached as Exhibit B to Dfs.' Mem.) Therefore, the United States must be substituted as a party defendant in place of the individual Defendants.

■ Sereika's FTCA claim against the United States must be dismissed for failure to exhaust administrative remedies. To file a claim under the FTCA, a claimant must first present the claim to the appropriate federal agency, in this case the BOP, and receive a written denial. *See* 28 U.S.C. § 2675(a); *see also McNeil v. United States,* 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993). Sereika does not dispute Defendants' assertion that Sereika never presented an administrative claim to the BOP. Accordingly, the Court finds that Sereika failed to exhaust administrative remedies for the purposes of the FTCA and therefore his FTCA claims are dismissed. *See Wyler v. United States,* 725 F.2d 156, 159 (2d Cir.1983). As Sereika failed to exhaust administrative remedies within the two-year statute of limitations for filing administrative claims (*see* 28 U.S.C. § 2401(b)), Sereika's FTCA

claims against the United States are dismissed with prejudice.

### III. ORDER

For the reasons set forth above, it is hereby

**ORDERED** that the motion to dismiss (Docket No. 17) filed by defendants Guatam Patel, Joaqin Ysmael, Chito Evangelista, Dr. Glover (collectively, the "individual Defendants"), the Metropolitan Correctional Center New York Health Services Unit (the "MCC Health Services Unit"), the Federal Bureau of Prisons (the "BOP"), and John/Jane Doe(s) (collectively, the "Defendants") is GRANTED with respect to the claims of plaintiff Michael Sereika ("Sereika") alleging a constitutional violation pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (*"Bivens"*), against the BOP and the MCC Health Services Unit; and it is further

**ORDERED** that Defendants' motion for summary judgment (Docket No. 17) is DENIED in part and GRANTED in part, as set forth herein. The Defendants' motion for summary judgment is DENIED without prejudice with respect to the claims alleging a constitutional violation pursuant to *Bivens* against the individual Defendants arising from an alleged eighteen-day delay in providing medical treatment to Sereika for a shoulder injury incurred on February 17, 2001. The Court grants Defendants leave to renew their motion after relevant discovery has been completed. The Defendants' motion for summary judgment (Docket No. 17) is GRANTED with respect to all remaining claims alleging a constitutional violation pursuant to *Bivens* against the individual Defendants; and it is further

**ORDERED** that the Defendants' motion to dismiss (Docket No. 17) is GRANTED with respect to the claims brought pursuant to the Federal Tort Claims Act against the individual Defendants and against the BOP and the MCC Health Services Unit for lack of subject matter jurisdiction; and it is further

**ORDERED** that the Defendants' motion to dismiss (Docket No. 17) is GRANTED with respect to the claims brought pursuant to the Federal Tort Claims Act against the United States on grounds that Sereika failed to exhaust administrative remedies; and it is further

**ORDERED** that Sereika re-file an amended complaint within forty-five days from the date of this Order indicating which of the individual Defendants made the alleged misrepresentations to Sereika regarding the grievance process; and it is further

**ORDERED** that the Court grants Defendants leave to renew their motion to dismiss on grounds of failure to exhaust administrative remedies after Sereika files an amended complaint as required pursuant to this Order, or in the alternative, after the time period for refiling pursuant to this Order has elapsed.

**SO ORDERED.**