201 F.3d 94 (2nd Cir. 2000)
 H. RICHARD HELLSTROM, M.D., Plaintiff-Appellant,
v.
U.S. DEPT. OF VETERANS AFFAIRS, PHILIP THOMAS, Director, Syracuse Medical Center, E. DOUGLAS HOLYOKE, M.D., and his successor, Chief of Staff, Syracuse Medical Center, CHIEF OF STAFF, SYRACUSE MEDICAL CENTER, Defendants-Appellees.
 Docket No. 99-6076
August Term, 1999
 UNITED STATES COURT OF APPEALS
SECOND CIRCUIT
 Argued: Nov. 15, 1999
Decided: Jan. 24, 2000
 
 Plaintiff appeals from an order of the United States District Court for the Northern District of New York (Scullin, Jr., J.), granting defendants' motion for summary judgment.
 VACATED AND REMANDED.
 MIMI C. SATTER, Satter & Andrews, LLP, Syracuse, NY (Richard A. Maroko, of counsel), for Plaintiff-Appellant.
 CHARLES E. ROBERTS, Assistant United States Attorney for the Northern District of New York (Thomas J. Maroney, United States Attorney for the Northern District of New York, of counsel), for Defendants-Appellees.
 Before: KEARSE, McLAUGHLIN, AND KATZMANN, Circuit Judges.
 BACKGROUND
 McLAUGHLIN, Circuit Judge:
 
 
 1
 Because this is an appeal from a grant of summary judgment for defendants, we review the evidence in the light most favorable to the plaintiff, the nonmoving party. See Bedoya v. Coughlin, 91 F.3d 349, 351 (2d Cir. 1996).
 
 
 2
 Dr. H. Richard Hellstrom was the laboratory chief at the Veterans Administration Medical Center ("VA") in Syracuse, New York for 16 years. As laboratory chief, Hellstrom supervised approximately 50 people.
 
 
 3
 In 1995, a job opening at the VA laboratory arose, and Hellstrom met with his Administrative Officer, David Morgan, to discuss whom to interview and hire. One of two veterans who applied for the opening, William Patterson, was from Newark, New Jersey. Apparently, Hellstrom did not want to hire Patterson, and expressed some startling views: (1) "He was born in 1946 - that makes him too old"; (2) "He is a veteran, and I don't want to hire a veteran"; and (3) "Do you think this guy is black? Who lives in Newark except blacks?" Hellstrom thus made it clear to Morgan that he did not want to hire veterans, blacks or persons over the age of 49. Hellstrom also instructed Morgan "to try to find something that would disqualify" Patterson; and when Morgan received favorable reports about Patterson, Hellstrom instructed him to "intensify efforts to get around" Patterson - if necessary by lowering the GS ranking of the opening in the hope that Patterson would be unwilling to relocate for a position at a lower level. Morgan took exception and told Hellstrom that he believed he was acting "illegally and immorally," and after Hellstrom disagreed, Morgan reported him to the personnel office at the VA.
 
 
 4
 The Chief of Staff of the VA, E. Douglas Holyoke, M.D., met with Hellstrom and ordered a formal investigation into the matter. Two investigators spent a week at the VA and interviewed 15 staff members. The investigators allegedly discovered evidence of Hellstrom's: (1) racial discrimination in hiring and creation of a hostile work environment; (2) repeated derogatory comments about blacks; (3) inappropriate comments about the Director of the VA, Philip Thomas; and (4) psychological abuse of the staff.
 
 
 5
 Specifically, VA staff members gave sworn testimony to the investigators that Hellstrom: (1) had a history of blaming blacks for crime, for having too many babies and for seeking welfare; (2) locked a physician out of a meeting; (3) publicly stated that he hated VA Director Philip Thomas, and called him an "enemy" and a "bully"; (4) spread rumors that Thomas had an affair with a staff member; and (5) called employees "idiots," "liars" and "con-men." Staff described the atmosphere in the lab as "intolerable," "dysfunctional" and "awful." Hellstrom gave testimony to the investigators as well, and denied much of the above.
 
 
 6
 The investigators issued a 500-page report detailing Hellstrom's conduct and concluding that he had: (1) engaged in racially discriminatory hiring practices; and (2) created a hostile work environment. The VA endorsed the recommendation of the report and reassigned Hellstrom to a non-management position.
 
 
 7
 Hellstrom filed various grievances challenging his reassignment. These grievances, along with his administrative appeal, were eventually denied.
 
 
 8
 In 1996, in the midst of the grievance proceedings, Hellstrom filed a complaint in the United States District Court for the Northern District of New York (Scullin, Jr., J.). He sought an injunction barring his reassignment. The district court denied the injunction, directing instead that the parties proceed with their grievance proceedings. In 1998, upon completion of the grievance proceedings, Hellstrom filed an amended complaint alleging that: (1) he was denied a formal hearing; (2) his reassignment was arbitrary and capricious; and (3) his attacks on Philip Thomas were protected speech, he had made protected comments opposing affirmative action and therefore his reassignment violated the First Amendment.
 
 
 9
 Before Hellstrom was able to take any depositions, or otherwise conduct discovery, the VA filed a summary judgment motion pursuant to Fed. R. Civ. P. 56. The district court granted the motion, dismissed Hellstrom's complaint and found that: (1) Hellstrom was not entitled to a formal hearing; (2) his reassignment was not arbitrary and capricious; (3) his comments about Thomas were personal, and, thus, not protected speech; and (4) he would have been reassigned anyway, regardless of whether he made comments about affirmative action.
 
 
 10
 Hellstrom now appeals, claiming that the district court erred because: (1) it granted summary judgment to the VA prior to discovery; (2) his reassignment violated the First Amendment; and (3) a procedural error by the VA in relation to Local Rule 7.1(f) (N.D.N.Y.) should have barred summary judgment.
 
 
 11
 For the reasons set forth below, we vacate and remand.
 
 DISCUSSION
 
 12
 We review the district court's decision to grant summary judgment de novo. See Bedoya, 91 F.3d at 351.
 
 I. The VA's Motion for Summary Judgment
 
 13
 Hellstrom contends that the district court erred by granting summary judgment to the VA prior to discovery. The VA argues that the district court properly granted summary judgment, and that no discovery was necessary because: (1) Hellstrom's complaint was dismissed solely as a matter of law; (2) Hellstrom showed no prejudice from the lack of discovery; and (3) Hellstrom had already been given informal discovery during the grievance proceedings.
 
 
 14
 Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
 
 
 15
 However, summary judgment should only be granted "[i]f after discovery, the nonmoving party 'has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof.' " Berger v. United States, 87 F.3d 60, 65 (2d Cir. 1996) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)) (alteration in original and emphasis added). "The nonmoving party must have 'had the opportunity to discover information that is essential to his opposition' to the motion for summary judgment." Trebor Sportswear Co. v. The Limited Stores, Inc., 865 F.2d 506, 511 (2d Cir. 1989) (quoting Anderson, 477 U.S. at 250 n. 5). Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery. See Sutera v. Schering Corp., 73 F.3d 13, 18 (2d Cir. 1995); Meloff v. New York Life Ins. Co., 51 F.3d 372, 375 (2d Cir. 1995); Jones v. Coughlin, 45 F.3d 677, 680 (2d Cir. 1995).
 
 
 16
 Here, Hellstrom was denied the opportunity to conduct discovery of any sort, and was even precluded from taking depositions. Hellstrom did indeed have access to three boxes of information used during the grievance proceedings and to two binders containing the administrative record; but that information was compiled exclusively by the VA, and contained only interviews and investigative findings focusing on allegations of Hellstrom's misconduct. The information was not directly pertinent to Hellstrom's First Amendment claims, which form the core of his complaint.
 
 
 17
 To state a claim for First Amendment retaliation, a public employee such as Hellstrom must establish that his at-issue speech: (1) can be "fairly characterized as constituting speech on a matter of public concern," Connick v. Meyers, 461 U.S. 138, 146 (1983); and (2) was a "substantial" or "motivating" factor in his employer's adverse employment decision, Mt. Healthy City School Dist. Bd. of Ed. v. Doyle, 429 U.S. 274, 287 (1977) (citation and internal quotation marks omitted). The employer has the burden of showing that the employee's First Amendment right is outweighed by the government's competing interest in an efficient workplace, and is given the opportunity to prove that even absent protected speech, discipline would have been imposed. See Lewis v. Cohen, 165 F.3d 154, 162-63 (2d Cir. 1999).
 
 
 18
 Hellstrom claims that the VA was, in substantial part, motivated to demote him because of his protected speech on a matter of public concern. Without the opportunity to undertake his own discovery, Hellstrom did not have a chance to adduce evidence to support this claim. He therefore was precluded from adequately opposing the VA's summary judgment motion.
 
 
 19
 In sum, Hellstrom was prejudiced in his efforts to accumulate needed evidence because he was denied the opportunity to conduct discovery. The grant of summary judgment to the VA was premature.
 
 CONCLUSION
 
 20
 We express no opinion on the parties' remaining contentions. Accordingly, we VACATE the grant of the appellees' motion for summary judgment and REMAND for further proceedings consistent with this opinion.