20-3965
*Rosado v. Maxymillian*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 6th day of January, two thousand twenty-two.

Present:

> DEBRA ANN LIVINGSTON,
> *Chief Judge.*
> AMALYA L. KEARSE,
> REENA RAGGI,
> *Circuit Judges.*

_____

RICHARD ROSADO,

> *Plaintiff-Appellant,*

JOHN SUGGS, ANDRE' LANE, RAYMOND LAGREE,
RYAN PRZESIEK,

> *Plaintiffs,*

> v.                                        20-3965-cv

DR. TERRI MAXYMILLIAN, Sex Offender Treatment Program Director, JEFF NOWICKI, Sex Offender Treatment Program Administrator, PETER RUSSELL, Acting Executive Director of CNYPC, DR. MICHAEL HOGAN, Commissioner of the Office of Mental Health, ANN SULLIVAN, Commissioner of the New

York Office of Mental Health,[*]

*Defendants-Appellees.*

---

| | |
|---|---|
| For Plaintiff-Appellant: | HANNAH K. REDMOND (George H. Lowe, Collin Michael Carr, Suzanne O. Galbato, and Melissa O. Rothbart, *on the brief*), Bond, Schoeneck & King, Syracuse, NY. |
| For Defendants-Appellees: | JONATHAN D. HITSOUS (Barbara D. Underwood, Solicitor General, Andrea Oser, Deputy Solicitor General, Joseph M. Spadola, Assistant Solicitor General of Counsel, *on the brief*), Assistant Attorney General, *for* Letitia James, Attorney General, State of New York, Albany, NY. |

Appeal from an amended judgment of the United States District Court for the Northern District of New York (McAvoy, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant Richard Rosado ("Rosado") appeals from the decision, order, and judgment of the U.S. District Court for the Northern District of New York (McAvoy, *J.*) entered on October 30, 2020, as well as the amended decision and order and amended judgment entered on November 12, 2020, both of which granted Defendants-Appellees' motion for summary judgment.[1]  Rosado has been confined in the Sex Offender Treatment Program at the Central New York Psychiatric Center ("CNYPC-SOTP") since 2008, following the completion of his second term of imprisonment for a sex offense.  He brought a civil rights suit under 42 U.S.C.

---

[*]  Peter Russell and Ann Sullivan, respectively, were automatically substituted for the two purported "FKA" persons pursuant to Federal Rule of Civil Procedure 25(d).

[1]  Although the notice of appeal states that Rosado appeals from, *inter alia*, the judgment and the amended judgment of the district court, an "amended judgment supersedes the original judgment." *United States v. Ryan*, 806 F.3d 691, 692 (2d Cir. 2015).

§ 1983, challenging the constitutionality of various conditions of his confinement, contending principally that they are more onerous than those imposed on prisoners serving their sentences. We assume the parties' familiarity with the underlying facts and procedural history of this case, which we reference here only as necessary to explain our decision to affirm.

\*　　\*　　\*

We review a district court's ruling on summary judgment *de novo*, resolving all ambiguities and drawing all reasonable inferences in favor of the non-moving party. *Jones v. Cnty. of Suffolk*, 936 F.3d 108, 111 n.2, 114 (2d Cir. 2019). Under Rule 56(a) of the Federal Rules of Civil Procedure, we will affirm a grant of summary judgment "only where there are no genuine disputes concerning any material facts, and where the moving party is entitled to judgment as a matter of law." *Id.* at 114 (internal quotation marks omitted). Phrased otherwise, we will affirm a grant where no reasonable jury could return a verdict for the nonmoving party. *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001).

## I.　　Standing on Access-to-Courts Claim

It is well-established that inmates have a constitutional right to access the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977), *abrogated on other grounds by Lewis v. Casey*, 518 U.S. 343 (1996).[2] This right requires "prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Id.* at 828. To establish standing for a claim for denial of access to the courts, an inmate must show that he suffered an actual injury, such that a

---

[2] Defendants-Appellees do not dispute that Rosado, as an involuntary civil confinee, possesses substantially the same right to access the courts as does a prisoner.

3

"nonfrivolous" legal challenge to his judgment of conviction or conditions of confinement "had been frustrated or was being impeded" by the actions of prison officials. *Lewis*, 518 U.S. at 351–53, 355; *see Bourdon v. Loughren*, 386 F.3d 88, 92–93 (2d Cir. 2004) (holding that, while access to law libraries and legal assistance programs is not a constitutional right in and of itself, an inmate establishes a violation by demonstrating that a library or legal assistance program's alleged shortcomings hindered his or her access to the courts).[3] For example, we have recognized that an inmate may establish standing "by demonstrating that he has been unable to file a complaint or has had a complaint dismissed for failure to observe a technicality." *Benjamin v. Fraser*, 264 F.3d 175, 184 (2d Cir. 2001).

Here, Rosado has not attempted to demonstrate any difficulty in pursuing specific litigation. Instead, Rosado conclusorily asserts that he has sustained an actual injury by being civilly confined in conditions that are punitive and violate his constitutional rights. Such an assertion is not enough to establish standing. *See Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (en banc) (explaining that, in bringing an access-to-courts claim, a plaintiff cannot rely on "conclusory allegations"). This is particularly true where, contrary to Rosado's claims, the record indicates that Rosado has successfully commenced two proceedings since his confinement at the CNYPC-SOTP. Accordingly, the district court did not err in rejecting Rosado's access-to-courts claim for failure to establish standing.

---

[3] The standard for proving actual injury varies according to whether the plaintiff is complaining of poor law libraries or interference with the ability to consult counsel. "While a prisoner complaining of poor law libraries does not have standing unless he can demonstrate that a direct right—namely his right of access to the courts—has been impaired, in the context of the right to counsel, unreasonable interference with the accused person's ability to consult counsel is itself an impairment of the right." *Benjamin v. Fraser*, 264 F.3d 175, 185 (2d Cir. 2001).

## II.    Limitation on Discovery

We review a district court's decision to limit discovery for abuse of discretion. *In re "Agent Orange" Prod. Liab. Litig.*, 517 F.3d 76, 103 (2d Cir. 2008). A district court abuses its discretion only "when the discovery is so limited as to affect a party's substantial rights." *Long Island Lighting Co. v. Barbash*, 779 F.2d 793, 795 (2d Cir. 1985). Summary judgment is to be granted if, after discovery, the nonmoving party "has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The nonmoving party must have had the opportunity to discover information that is essential to his opposition to the motion for summary judgment." *Hellstrom v. U.S. Dept. of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000) (quoting *Trebor Sportswear Co. v. The Ltd. Stores, Inc.*, 865 F.2d 506, 511 (2d Cir. 1989) (internal quotation marks omitted)). We recognize, however, that when a party has had "ample time in which to pursue the discovery that it now claims is essential," a district court has broad discretion to deny a request for further discovery. *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 927 (2d Cir. 1985). On appeal, Rosado argues that it was reversible error for the district court to rule on Defendants-Appellees' motion for summary judgment by assuming *arguendo* that he had a due process right to meaningful treatment while confined at the CNYPC-SOTP when he had not yet consulted an expert. Specifically, Rosado asserts that he had reasonably not completed expert discovery based on his understanding that the district court had limited the scope of its summary judgment decision to the existence of a due process right. We are not persuaded.

Rosado had ample time to make the required expert discovery. Discovery was ongoing for over three years, from January 2016 to May 2019. *See Jackson v. Fed. Express*, 766 F.3d 189, 198 (2d Cir. 2014) (finding no abuse of discretion where the district court denied a motion to

5

reopen discovery, and granted a motion for summary judgment, where the appellant had seven months to conduct discovery). Further, there is no indication that Rosado diligently used these years. *See Burlington Coat Factory*, 769 F.2d at 927 (noting that "[c]laims of a need for more discovery by a party who has diligently used the time available . . . should be given more favorable consideration"). Rosado does not assert that he could not have been expected to recognize a need to deploy expert evidence. *Cf. Youngberg v. Romeo*, 457 U.S. 307, 323 (1982) (stating that plaintiff must show that "the [treatment] decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment"). Rather, Rosado's appointed attorneys assert that they were trying to minimize costs and only learned after the close of discovery that funding might be available to retain an expert witness. Such a miscalculation does not limit the district court's broad discretion to deny a discovery request. *See id.* Finally, we note that the district court stated that Rosado "may renew [his] request" with respect to expert discovery "if necessary," Dkt. 150, and that any such discovery became unnecessary in light of the court's ruling on the law. Accordingly, we discern no abuse of discretion by the district court.

### III. Substantive Due Process Claims

In assessing whether state officials have adequately protected a civilly confined person's fundamental liberty interest, we apply the professional judgment standard. *Youngberg*, 457 U.S. at 321. This standard "only requires that the courts make certain that professional judgment in fact was exercised." *Id.* "[P]rofessional judgment has nothing to do with what course of action would make patients safer, happier and more productive." *Soc'y for Good Will to Retarded Child., Inc. v. Cuomo*, 737 F.2d 1239, 1248 (2d Cir. 1984) (internal quotation marks omitted). Nor does the professional judgment standard require courts to "specify which of several

6

professionally acceptable choices should have been made." *Youngberg*, 457 U.S. at 321. Rather, "it is a standard that determines whether a particular decision has substantially met professionally accepted minimum standards." *Cuomo*, 737 F.2d at 1248. Rosado challenges four conditions of his confinement: (1) the adequacy of his treatment; (2) the use of physical restraints; (3) the CNYPC-SOTP's policies on access to the internet; and (4) the sufficiency of his vocational training. We agree with the district court that Rosado failed to raise an issue of material fact as to each of these substantive due process claims.

### 1. Treatment

Rosado first argues that the State, having justified his civil confinement on the basis of its judgment that he has a mental abnormality, has an obligation under the Fourteenth Amendment to provide him with treatment that is constitutionally adequate. We assume *arguendo* the applicability of our statement in *Woe ex rel. Woe v. Cuomo* that a right to treatment is "an essential condition of the state's power of involuntary commitment." 729 F.2d 96, 104 (2d Cir. 1984). Thus, "[i]f the justification for commitment rests, even in part, upon the need for care and treatment, . . . then a State which commits must also treat." *Id.* at 105. Under the professional judgment standard, treatment is constitutionally adequate where "the treatment decision was professionally made and falls within the scope of professional acceptability." *Id.*; *see also Youngberg*, 457 U.S. at 324 (holding that "decisions made by the appropriate professional are entitled to a presumption of correctness").

In this case, CNYPC-SOTP officials "have implemented a detailed treatment program that employs a certain program, certain privileges, and certain restrictions." *Rosado v. Maxymillian*, No. 913CV359T KMTWD, 2020 WL 6384768, at *15 (N.D.N.Y. Oct. 30, 2020). Defendants-Appellees submitted declarations from CNYPC-SOTP treatment professionals explaining that the

7

treatment program at the CNYPC-SOTP is based on the professional judgments of the clinical staff at the Office of Mental Health ("OMH") and the CNYPC-SOTP. Rosado challenges treatment decisions that were made in his case, alleging that the same treatments were used "over and over," such that he made the choice to stop participating in treatment. *Id.* at *15 n.11. But these generalized disagreements do not raise a triable issue of fact as to whether there was "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on [their professional] judgment." *Youngberg*, 457 U.S. at 323; *cf. Woe*, 729 F.2d at 106 (finding treatment inadequate under the professional judgment standard where a psychiatric center had lost its Department of Health and Human Services certification).

### 2. Physical Restraints

Rosado next argues that the district court erred by failing to address his claim that the CNYPC-SOTP's use of physical restraints was punitive. Rosado alleges that the CNYPC-SOTP's practice of using all available safety and security devices for all residents, including the restrictive "black box" device, runs contrary to the governing OMH policy, which reflects OMH's professional judgment on the matter. We again disagree.

First, Rosado misreads the OMH's policy on safety and security devices, which establishes minimum safety device requirements, rather than a ceiling on the maximum use of devices. Second, Rosado fails to allege sufficient facts to rebut the presumptively valid judgment of CNYPC-SOTP security officials. CNYPC-SOTP officials maintain that the use of multiple restraints is necessary to transport residents because of the State's strong interest in protecting the public and transport staff from the type of sexual and violent crimes that involuntarily confined residents have a documented propensity to commit. *See Ahlers v. Rabinowitz*, 684 F.3d 53, 61

(2d Cir. 2012) ("[T]he state's interest in maintaining order and security is not punitive in purpose or character, and remains valid in institutions of civil commitment.").[4]  Rosado's complaints about the discomfort of the restraints or the extent of their use do not undermine the professional judgment of the officials who implemented the program, for his claims are not supported by evidence of long-term physical injuries or other consequences admitting a plausible inference of punitiveness.  In affording appropriate deference to these circumstances, we thus refrain from assessing "whether in fact the best course of action was taken." *P.C. v. McLaughlin*, 913 F.2d 1033, 1043 (2d Cir. 1990).

### 3. Access to the Internet

Rosado next disputes the adequacy of his access to the internet within the CNYPC-SOTP, particularly as compared to the access he had within the Department of Corrections and Community Supervision ("DOCCS").  Rosado reads *Youngberg* to suggest that conditions of civil confinement must be categorically less restrictive than conditions of criminal confinement. 457 U.S. at 321–22 ("Persons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish.").  Once more, we disagree.

As an initial matter, Rosado misreads *Youngberg*.  We determine the substantive rights of involuntarily committed individuals by balancing the interests of the individual against the interests of the State.  *Id.* at 320; *see Buthy v. Comm'r of Off. of Mental Health*, 818 F.2d 1046,

---

[4]  To be clear, we here consider not the professional judgment exercised by medical personnel in treating CNYPC-SOTP residents, *see Youngberg*, 457 U.S. at 323 n.30 (describing the officials to which professional treatment deference may apply), but rather the judgment exercised by security officials responsible for ensuring that involuntarily confined persons neither escape their lawful confinement nor injure themselves, those transporting them, or others.

1050–51 (2d Cir. 1987) (balancing interests to determine the due process rights of persons committed after acquittal by reason of insanity). Here, the State has an interest both in maintaining safety and security and in providing treatment to sex offenders. *See Ahlers*, 684 F.3d at 61; *McKune v. Lile*, 536 U.S. 24, 33 (2002) ("States . . . have a vital interest in rehabilitating convicted sex offenders."). Unlike the criminal context, in the civil context, the State does not have a punitive interest to balance, with the result that conditions of civil confinement will often be less restrictive than those of criminal confinement. But this will not always be the case, given the State's continued interests in safety and treatment.

Here, the CNYPC-SOTP restrictions on internet access are justified by the State's interests in security and treatment, as well as the professional judgment of CNYPC-SOTP officials. The State's interest in treatment justifies greater restrictions on internet access for these civilly committed individuals. The record reflects that otherwise harmless mediums, such as clothing websites or advertisements, can furnish content that interferes with residents' treatment goals. CNYPC-SOTP officials have concluded that Rosado's proposal of a firewall or other security controls that his internet technology expert stated would be "capable of preventing residents from accessing inappropriate websites, such as pornography and other explicit materials," J.A. 435, "is inadequate from a clinical perspective, because SOTP residents have an extensive variety of fetishes and predilections," such that exposure to even innocuous material may frustrate treatment goals, Defendants-Appellees Br. at 43. Such a conclusion does not represent "a substantial departure from accepted professional judgment." *Youngberg*, 457 U.S. at 323.

### 4. Vocational Training

We likewise reject Rosado's final substantive due process claim, which challenges the sufficiency of the vocational training available at the CNYPC-SOTP and argues that it falls below

that available at DOCCS. As is true for the CNYPC-SOTP's policy on media access, the vocational training at the CNYPC-SOTP need not necessarily be more expansive than that available at DOCCS simply because the State has no punitive interests at stake in the confinement of the civilly committed. Here, the available vocational training reflects the professional judgment of CNYPC-SOTP officials, who have determined that the training provides benefits to residents, such as learning to keep a schedule or complete a timecard. These professional judgments are not called into question simply because Rosado views certain of the occupational opportunities as menial.

* * *

We have considered Plaintiff-Appellant's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the amended judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court